Parker, J.
This action in the court below was brought by Water-worth against said Railroad Company, on account of personal injuries received by him while in the employ of the company as a brakeman, he having had his hand badly injured and practically destroyed while he was coupling cars; and he avers this was due to a defect in the cars; that one of the bumpers or buffers was loose and out of condition and hung down in a somewhat twisted shape, so that when he undertook to couple the cars his hand was caught between the bumpers, whereas it would not have been caught had the bumpers been in proper condition.
The company denied that there was any defect or that it was guilty of any negligence in the premises, and avers that plaintiff’s injuries arose from his own negligence.
The case went to a jury, which returned a verdict in favor of the plaintiff below for $4,000.00.
A motion for a new trial was overruled and judgment entered upon this verdict, and the railroad company now prosecutes error in this court,
One of the grounds of the motion for a new trial,and the ground that is now urged here on error, is that the verdict was against the weight of the evidence. Upon looking into the bill of exceptions, we find this condition: that there was a drawing used upon the trial which appears to have been a diagram of the grounds where the tracks of the company were, showing the tracks, etc., where this accident occurred. This question of the location of the cars, and of their movements upon this occasion, became material. Witnesses were interrogated with respect to the position of certain cars, and in undertaking to state where the cars were situated and how they were moved, in order that their testimony might be understood by the jury, they were asked to indicate these positions and movements upon the map, which they did, and it appears from the record that in certain instances they made marks upon the map to indicate the positions about which they had testified, so that the map, after it had been thus identified and used, was a material document and piece of evidence in the case. At page 103 of the bill of exceptions it appears that the plaint *497 iff offered this map in evidence, and that it was marked “Plaintiff’s Exhibit A. ” This map is not attached to the bill of exceptions nor filed with the papers in the case. The omission of this and certain other exhibits seems to have been due'to the circumstance that the attorney for the railroad company at the,time of the making up of the bill of exception, was ill and practically blind, and that he was obliged by his condition to leave the matter of the preparation of this bill of exceptions to the stenographer and to his own subordinates, and by some mischance these exhibits were not attached within the time allowed for perfecting a bill of exceptions, or at all,
There were other papers, certain slips', introduced in evidence, indicating repairs which had been made upon these cars, and these seem to have been regarded by the parties as somewhat material; and they may have been; without seeing them we can not tell, and they are not attached. At page 192 of the bill of exceptions it appears that these slips indicating repairs upon the cars, were formally intro duced in evidence.
There was still another paper, perhaps even more important than the others: one Dorner was called as a witness on behalf of the railroad company, and testified with respect to the condition of this car alleged to have been defective, saying, in effect, that the car was not deficient, or was not defective in the particular alleged in the petition. He testified to some other defect in the car, but upon the opposite end from that at which the plaintiff received his injury. Upon cross-examination he was asked about certain statements made in an affidavit which he had made respecting this same matter at the solicitation of attbrneys for the plaintiff. This affidavit appears to have been presented to him,and in the course of his cross-examination he was asked if he had not made the statements in that affidavit, and he assented that he had, but with respect to some of the statements he undertook to say that he did not understand them —did not understand that they were of the import that they appeared to be when the affidavit was exhibited. There was other testimony with respect to this affidavit to the effect that he had made it voluntarily; that it had been read over to him, and that he appeared to understand it; that it *498 set forth the statements as he had made them and in his own language; and after all this, at page 209 of the record, it appears that this affidavit was introduced in evidence and marked as an exhibit, plaintiff claiming that it tended to impeach the testimony of this witness upon certain points, This affidavit is not attached to the bill of exceptions.
We had occasion recently to pass upon a question like this, in the case of Hohly v. Sheeley, (ante, page 484), In that case a photograph had been used, practically as this diagram has been used in this case, but the photograph was not attached to the bill of exceptions, and we found that under the authorities we were therefore precluded from examining the case upon the question of the weight of the evidence, all of the evidence not being attached and made a part of the bill of exceptions, I shall not take time to read this opinion now, but all that was said in it with respect to the photograph, we think is applicable to the matter of the diagram here. There are other authorities still more distinct upon the question of such written evidence as the affidavit and the slips that I have méntioned. There is one case referred to in the course of that opinion where a diagram which seemed to have served practically the same purpose upon the trial as the diagram in this case, i. e., used in practically the same way (it being a personal injury case arising out of an accident occurring in a coal mine), and the diagram was not attached to or made a part of the bill of exceptions.
The circuit court held that the case could not be considered upon the question of the weight of the evidence. I refer to the case of Foster Coal Company v. Leander Moherman et al., 9 Ohio Circuit Court Reports, 544, and I will read a single short paragraph, at page 551, from the opinion of Judge Laubie. He says:
“So far as the verdict is concerned, we are not prepared to say but what it is right; but at all events we would not be at liberty to consider that question,for the reason that we do not have all of the evidence before us that was before the jury in the court below. They used a map largely in the testimony in this case, and witnesses pointed to it, pointed places out upon it, horse backs in the , mine here and there, etc. It was patent and plain to the jury, but it *499 is entirely unintelligible to us, so that in any event we could not examine the question whether the verdict was sustained by the weight of the evidence or not; but so far as it is disclosed, and treating those matters as to the map as immaterial, we do not see how the jury could have done otherwise than what they did.”
We take occasion to say here that while we adhere to our holding in the case of Hohly v. Sheeley because it seems to be required by the uniform holdings of the courts upon this subject; and yet we do this with less reluctance in this case, for the reason that it appears to us that it will not defeat the ends of justice.
We have had occasion, in examining other questions in this case, to look very carefully into this record, and without taking time to discuss the evidence we will say, that so much as is presented here persuades us that the verdict was not against the weight of the evidence; whether our conclusions would be at all different or varied in any respect by having the additional evidence in the record, of course we do not say, but assuming that the exhibits were immaterial, and assuming that they would not change our opinion, I am of the opinion that this verdict is sustained by the weight of the evidence. Judge Haynes suggests that this should be stated in a somewhat different form, and on his behalf I will put it in this form: Upon the material questions of fact, upon which hinges the question of liability of the company, there is a great deal of conflict in the testimony, and that the nature of the case is such and the condition of the record upon the testimony is such, that we cannot say that the verdict is opposed to the weight of the evidence.
The plaintiff alleged that he received this injury while coupling cars; that one of the cars was standing upon the track and another was moving, so that they came*together, and when he attempted to make a coupling he was injured. Upon the question whether he was negligent in not observing the alleged defect in the bumper of one of these cars, he was inquired of as to the time that would be occupied in this operation of bringing the cars together and coupling them, and in the course of the examination, which was by the plaintiff’s counsel and was for the purpose of showing *500 that he would have no time to make the inspection or observation which would have apprised him of the faulty condition of the car, he was asked this question:
“Q. How much time did a man acting as a switchman have to do his work in; how rapidly did he have to work to get his work accomplished? A, He has got to work right along quick and sharp.
‘‘Q. What opportunities does he have to inspect or examine the car and coupling apparatus before making a coupling; I mean as you did the work there in the month of November, 1898?” .
That question was objected to and the objection was sustained. Then he was asked:
‘‘Q. How much time, as the work was customarily done, did a switchman have to examine the car apparatus before making a coupling?”
An objection on behalf of the railroad company was overruled and exception taken, and his answer was:
“A. He does not have any time to examine the couplings.”
A motion was made to rule out that answer, which was overruled and exception taken. The ground of objection to this was that the witness was allowed to give his conclusion as to whether he would have time to observe the condition of the cars. There is more testimony of the same character at page 46 of the record. We think that in describing an operation of this character, which must take place in an extremely limited period of time, it is net practicable, that it is scarcely possible, for a witness to testify and briDg out the point that was sought to be brought out by the plaintiff here, otherwise than as the witness did testify; in other words, that it would hardly be possible to make it intelligible to the jury (even if the witness were qualified to so statb), if he should say that to observe the location of a link in the end of a drawbar would require a certain fraction of a second; that it would take another certain extremely short period of time to take hold of the link, in order that he might have it in position to insert it into the drawbar of the car that was coming up; and that he could proceed along with each movement required describing the time that it would consume, and the time *501 that would be occupied in the cars coming together, so as to allow the jury to reason out and conclude therefrom that the time would all be occupied in the operation, and that therefore he would not have time to make all of the observations which would apprise,him qf any defect about the car. We think that in a matter of this kind it is competent for a witness to state, in effect, as he does here, that the operation requires such suddeness and quickness of movement as that his time would be all occupied and his attention all taken up in and about the performance of that duty, so that he would not have time to look out for anything else, or to do anything else, and that is about all this testimony amounts to. We conclude that there is no error in this.
Mr. LeBeau, a witness for the plaintiff, testified, at pages 95-96, to the manner in which they inspected the cars on this occasion; and, further along, to how they were in the habit of inspecting the cars in this yard, or how it was customary to doit, and said that they sometimes moved the train of cars and switched off a part of the cars while the operation of inspection was going on; which would seem to be a dangerous, hazardous and negligent way of doing the business. Objection was made to his testifying, to this being customarily done, and it is urged that that testimony might have had a tendency to mislead the jury and give them a wrong impression as to what was actually done on this occasion, it being said by counsel for the railroad company that what they did in the way of moving cars from a train where the cars were being inspected was, simply to push away from the rear end of the train, without moving the whole train, certain cars which had already been inspected, and that the answer of the witness would indicate that they might be doing it in a more dangerous and negligent way that would result in their not fairly inspecting the cars, or not having an opportunity to inspect them. But in looking into the testimony of this same witness, after he was taken in hand by counsel for the railroad company, we find that he clears the whole matter up. He was asked:
“Q. Was it not customary for an engine coming onto a train of cars, to give some signal of their approach, where *502 they knew it was being inspected? A. When they would switch cars on the siding, they would be careful, and would not shove them forward at a high rate of speed, and they were careful enough not to shove them the other way against us.
“Q. Do you mean while you were in the process of inspecting cars, that the train would come down with their engine and move the particular cars you were inspecting? A. No,,sir, others that had been inspected.”
So that we cannot think the jury had been misled in any way to the prejudice of the rai-road company by this testimony upon this question.
In the answer it is also averred that the accident was due to one of the ordinary perils of the service, the risk of which plaintiff assumed when he entered upon such service. This is denied by the reply. Neither the petition, answer or reply contains any averment as to inspection or omission thereof, or as to the employment or failure to employ competent inspectors. There was testimony introduced tending to show that the defendant employed competent inspectors and that they inspected the car in question, but failed to find the alleged defect therein. On the other hand, testimony was introduced tending to show that the persons who were put to the work of inspecting the cars on this occasion were not competent, and that they proceeded with their work in a rapid and negligent manner; this being in a measure due to a failure of the company to afford them time and facilities to make a proper inspection.
, In so far as this testimony shed light upon the issue as to the existence of the defect, it was competent. Rut the defendant claims for it that it discloses that defendant had taken such action in the premises as exonerated it from liability on account of the defect, if it existed; also that it disclosed that the fault, if there was a fault, was that of inspector's who were fellow servants of plaintiff, and that the negligence of fellow servants being one of the risks of employment that he assumed, he Has no ground of action against the company.
Assuming that the pleadings present this issue,' and that we may look into this defective bill of exceptions to determine this question (both of which assumptions seem to be unauthorized), we will discuss the point briefly.
*503 How far the rule that car inspectora and brakemen are fellow servants, laid down in Railway Co. v. Webb, 12 Ohio St., 4-75, and Railway Co. v. Fitzpatrick, 42 Ohio St., 318, has been affected by the act of April 2, 1890, 87 O. L., 147; Revised Statutes, sections 3365-21, 3365-22, is a question not yet set at rest, we believe, by the decisions. Counsel for the company undertake to distinguish this case from that of Railway Co. v. Erick, 51 Ohio St., 146, in which it is said that there was a chief inspector, having other inspectors under him, upon which the learned judge delivering the opinion remarks (page 162) that “ the chief inspector would not, by the provisions of the latter part of the third section of this statute, be a fellow-servant,” and states this as an additional reason for holding that the trial court did not err with respect to its charge, Counsel here regard this language as implying that if the inspector had not been a chief inspect- or, the rule as to fellow servants would have applied and perhaps changed the result, and point out that in the case at bar the inspector who inspected this car was not a chief, but was a subordinate inspector.
We undersand that the• learned judge in the language quoted was indicating a reason why the action of the trial judge was right in view of the provision of the latter part of the third section of the act; but we further understand the court as holding that the action of the trial judge was supported by the other provisions of the act entirely independent of those found in section there. The court holds in that case that to overcome the presumption of negligence on the part of the company arising out of the use of defective appliances, the burden is upon the company to “show by proof that it has used due diligence, and is not guilty of negligence;” also that to overcome the presumption of knowledge of the defect it is not sufficient to show the employment of competent and careful inspectors and the imposition upon them of the duty of making the inspection, but that “it would take an actual and proper inspection, or its equivalent, to overcome the statutory presumption of knowlege of such defect.” (Page 162). This language applies to inspections of all classes and grades. It is apparent that if the employment of a competent chief inspect- *504 or will not exonerate the company, the employment of a subordinate should not have that effect. The question of superior or fellow servant seems to be wholly aside from the question of presumptive knowledge and presumptive negligence on the part of the company. We believe that the doctrine of fellow servants cannot be applied to inspectors and other employes and woven into this statute so as to defeat the plain provisions and purposes thereof respecting presumptive knowledge of and presumptive negligence in the use of defective appliances.
“Actual and proper inspection, or its equivalent,” must be shown whether the inspector is a chief or a subordinate, to overcome these presumptions. Whether there was “actual and proper inspection, or iis equivalent” in this case under such circumstances as would exonerate the company, is a disputed question of fact, a solution of which requires a weighing of the evidence, a thing not authorized under the present condition of this record.
Complaint is made of the magnitude of the verdict, it being for $4,000.00. Plaintiff was forty-two years of age and in good health and sound in body at the time he received this injury. He was earning $65.00 per month, and was capable of earning this or more, regularly. His hand is destroyed, and it appears that he is not now capable of earning more than about one-third as much as formerly. The amount of this verdict invested so that principal and interest might be paid to him during the period of his expectancy of life would not afford him for that period an income greater than that of which he has been deprived by this disability; so that, leaving out of the account his suffering, physical and mental, we cannot see that the verdict is excessive.
It was objected also that the wife of the plaintiff was allowed to testify as to certain transactions between herself and her husband which transpired when no third person, competent to be a witness, was present. The only transaction of that kind that we find testified to by the wife about which that objection might be made, was to the effect that her husband turned over his wages to her on certain occasions. She does not undertake to tell how much. The purpose of the evidence was to show about how much he *505 was earning. The- plaintiff himself testified as to -the amount of his earnings, and there does not appear to be any dispute about that, and he also testified that he. turned .these wages over to his wife. We cannot see that her testimony to the same effect, would have possibly prejudiced the railway company.
Emory D. Potter, for Plaintiff in Error.
Hurd, Brumback & Thatcher, for Defendant in Error.
These axe all the questions that are made upon this record —-all the alleged errors. Finding no error in this record, the judgment of the court of common pleas will be affirmed.